**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MARCOS NARCISO MARTINEZ, Individually and on Behalf of All Others Similarly Situated,**<br><br>                    **Plaintiff,**<br><br>-against-<br><br>**FUNSAN K. CORP. d/b/a BEACON WINES & SPIRITS, C.Y. NEW CORP. d/b/a MITCHELL'S WINES & LIQUOR STORE, CHI YOUNG CHUNG, and KYONG SUK YI Jointly and Severally,**<br><br>                    **Defendants.** | **COLLECTIVE ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiff Marcos Narciso Martinez ("Martinez" or "Plaintiff"), individually and on behalf of all others similarly situated, as collective action representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff is a former stocker, floor employee, cashier and delivery employee at Defendants' liquor stores, Beacon Wines & Spirits and Mitchell's Wines & Liquor Store, both located in New York County, New York. Defendants paid Plaintiff and their other similarly situated employees a flat weekly rate that did not compensate employees at the statutory minimum wage or provide overtime premiums for hours worked in excess of forty (40) hours per week

2.      Plaintiff brings this action to recover unpaid minimum wage and overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and the New York Labor Law ("NYLL") §§ 650 *et seq.*  Plaintiff also brings claims for unpaid spread-of-hours premiums and withheld gratuities and for Defendants' failure to provide accurate wage statements and wage notices pursuant to the NYLL and supporting regulations.

3.      Plaintiff brings his FLSA claim on behalf of himself and all other similarly situated employees of Defendants and the NYLL claims on behalf of himself and any individual who elects to opt in to this action.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district and Defendants maintain business locations in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§

2201 and 2202.

## THE PARTIES

**Plaintiff:**

7.     Plaintiff was, at all relevant times, an adult individual residing in Kings County, New York.

8.     Throughout the relevant time period, Plaintiff performed work for Defendants at Beacon Wines & Spirits, located at 2120 Broadway, New York, New York and Mitchell's Wines & Liquor Store, located at 200 West 86th Street, New York, New York.

9.     Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form is attached hereto and incorporated by reference.

**Defendants:**

10.     Funsan K. Corp. d/b/a Beacon Wines & Spirits ("Beacon Wines") is an active New York corporation with its principal place of business located at 2120 Broadway, New York, New York 10023.

11.     C.Y. New Corp. d/b/a Mitchell's Wines & Liquor Store ("Mitchell's Wines" and, collectively with Beacon Wines, the "Corporate Defendants") is an active New York corporation with its principal place of business located at 200 West 86th Street, New York, New York 10024.

12.     Defendant Chi Young Chung ("Chung") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.  Throughout the relevant time period, Chung was in charge of determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of the Corporate Defendants.

13.     Defendant Kyong Suk Yi ("Yi" and, collectively with Chung, the "Individual Defendants" and, together with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.  Throughout the relevant time period, upon information and belief, Yi was in charge of determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of the Corporate Defendants.

14.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously in their direction and control of Plaintiff and the Corporate Defendants' other similarly situated employees, and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are each jointly and severally liable with the Corporate Defendants.

15.     Upon information and belief, the Corporate Defendants operate together as a single integrated business enterprise utilizing the same business practices and policies.

16.     Defendants' operations are interrelated and unified.

17.     At all relevant times, the Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

18.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

19.     At all relevant times, Plaintiff and any opt-in plaintiffs were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

20.     Upon information and belief, at all relevant times, the Corporate Defendants have

had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiff brings his First and Second Causes

of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since July 21, 2013
> and through the entry of judgment in this case (the "Collective
> Action Period") who worked in Beacon Wines and/or Mitchell's
> Wines as stockers, floor workers, delivery employees, cashiers or
> other non-management employees (the "Collective Action
> Members").

22.     A collective action is appropriate in this circumstance because Plaintiff and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policy of failing to compensate them at minimum wage and to provide overtime premiums

for hours worked in excess of forty (40) hours per week.  As a result of these policies, Plaintiff and

the Collective Action Members did not receive the statutory minimum wage or overtime premium

payments for all hours worked in excess of forty (40) hours per week.

23.     Plaintiff and the Collective Action Members have similar job duties and are paid

pursuant to a similar, if not the same, payment structure.

## STATEMENT OF FACTS

**Defendants' Companies**

24.     At all relevant times, Defendants have operated two (2) liquor stores in the Upper

West Side neighborhood of Manhattan. Upon information and belief, Defendants currently own,

operate and manage Beacon Wines & Spirits, located at 2120 Broadway, New York, New York

and Mitchell's Wines & Liquor Store, located at 200 West 86th Street, New York, New York.

25.     According to the New York Department of State – Division of Corporations filings,

Defendant Chung is the Chief Executive Office of Mitchell's Wines.

26.     Upon information and belief, Defendant Chung is present on a daily basis at Beacon Wines, where he has an office, and is frequently present at Mitchell's Wines, where he oversees the operations of the store, supervises employees and implements the policies complained of herein.

27.     Upon information and belief, Defendant Yi is frequently present at Beacon Wines and Mitchell's Wines where she oversees the operations of the store, supervises employees, handles payroll matters, speaks frequently with managers, and implements the policies complained of herein.

**Plaintiff's Work for Defendants**

28.     Plaintiff Martinez worked for Defendants as a stocker, floor worker, cashier, and delivery employee from in or around November 2011 to in or around October 2013 and from in or around November 2014 to in or around March 2016 (together, the "Martinez Employment Period").

29.     From November 2011 through in or around October 2013, Plaintiff Martinez worked at Beacon Wines.  From in or around November 2014 to in or around March 2016, Plaintiff worked at Mitchell's Wines.

30.     Plaintiff's duties at both locations included unloading boxes from delivery trucks and placing them in storage, replacing inventory on the shelves, cleaning, disposing of boxes, making deliveries on foot and assisting delivery drivers, and working at a cash register.

31.     At the beginning of the Martinez Employment Period, he primarily performed stocking, floor and cleaning duties that included, but were not limited, to stocking shelves and maintaining a correct inventory of liquor at the store. He also performed some deliveries on foot and assisted a delivery driver approximately once or twice per week; in total he spent at most three

(3) hours per day performing deliveries. When Martinez worked at Mitchell's Wines, he performed the same duties. In addition, during approximately his final six (6) months working for Defendants at Mitchell's Wines, he typically worked at the cash register on Sundays.

32.     When Martinez worked at Beacon Wines, he typically alternated working five (5) day weeks and seven (7) day weeks. When Martinez worked a seven (7) day week, he typically worked Monday through Saturday from 10:00 am to 8:00 pm and Sunday from 12:00 pm to 8:00 pm for a total of approximately sixty-eight (68) hours per week. When Martinez worked a five (5) day week, he typically worked Tuesday through Friday from 10:00 am to 8:00 pm and Saturday and Sunday from 12:00 pm to 8:00 pm for a total of approximately forty-eight (48) hours per week.

33.     Martinez was rarely able to take a break, and when he was able, his break typically lasted between five and seven (5-7) minutes.

34.     In or around November 2014, Plaintiff Martinez decided to return to work at Beacon Wines, which he had left in or around October 2013.  At this time, he was told by one of his former co-workers at Beacon Wines that there were no openings for work at Beacon Wines but that the owners needed employees for their other store, Mitchell's Wines.

35.     Plaintiff Martinez often observed the Individual Defendants at both locations.  He observed Defendant Chung at both locations. Defendant Chung brought the money to pay employees, worked in his office at Beacon Wines, and viewed security camera footage. Moreover, Plaintiff frequently observed Defendant Yi communicating with managers.

36.     For approximately the first year that Martinez worked at Mitchell's Wines, he typically worked six (6) days per week, from 12:00 pm to 10:00 pm Tuesday through Saturday and from 12:00 pm to 8:00 pm on Sunday, for a total of approximately fifty-eight (58) hours per week.  Subsequently, through the end of the Martinez Employment Period, Plaintiff Martinez

typically worked Tuesday, Thursday and Saturday from 10:00 am to 10:00 pm, Wednesday and Friday from 3:00 pm to 10:00 pm and Sunday from 12:00 pm to 8:00 pm for a total of fifty-eight (58) hours per week. When Martinez worked at Mitchell's, he was able to take one break of approximately ten to fifteen (10-15) minutes per day.

37.     When Plaintiff Martinez worked at Beacon Wines, he was paid three hundred and eighty dollars ($380) per week, regardless of how many hours he worked. When Plaintiff Martinez began working at Mitchell's Wines, he was initially paid four hundred and forty ($440) per week, which increased after approximately six (6) months to four hundred and sixty ($460) per week. In or around January 2015, his rate was increased to five hundred dollars ($500) per week, and in January 2016, his rate was increased to six hundred dollars ($600) per week.

38.     At Beacon Wines and Mitchell's Wines, Plaintiff Martinez was able to keep the cash tips that he received when he made deliveries. At Beacon Wines, Plaintiff Martinez received few tips, at the most two to five dollars ($2.00-$5.00) per delivery.  If he received credit card tips, he was required to report the amount to managers "Chris" and "Francisco."  Martinez was paid a portion of the amount that he received in credit card tips, typically about half of the tip amount, and the rest was retained by the company.  It was his understanding that Defendants did not take a set amount of the credit card tips but that the amount varied.

39.     On occasion, a customer would ask Martinez if Martinez had received a tip the customer had paid via credit card on a previous occasion, and frequently Martinez had not received the tip.  Martinez would then ask his manager "Francisco" about the tip on his return to the store but received no explanation as to why he had not received the tip.

40.     Throughout the Martinez Employment Period, Martinez was paid in cash, once per week, which he received in an envelope that had his name on it.

41.     From the beginning of the Martinez Employment Period until in or around January 2016, Martinez's wages were not accompanied by any paystub, wage statement or other record showing his hours worked, rates of pay, tip amounts or any other payment information.

42.     Beginning in or around January 2016, Martinez began to receive a paystub with his cash wages. The paystubs showed a rate of nine dollars ($9) per hour for regular hours and thirteen dollars ($13) per hour for overtime hours.  Even though Martinez knew the paystub was incorrect because he was still paid a set amount per week, he was required to sign a paper confirming his hours and rates in order to received his wages.

43.     It was Martinez's understanding that Defendants began providing paystubs and raised employees' wages after they were previously sued for paying wages incorrectly.

44.     Throughout the Martinez Employment Period, Defendants did not provide Martinez with any method to track his time worked.

45.     Although Martinez typically worked well over forty (40) hours per week and performed non-exempt duties, he was paid a flat weekly rate that, for the vast majority of his employment with Defendants, did not compensate him at the statutory minimum wage for much of his employment or provide overtime premiums for all hours worked in excess of forty (40) per week.

46.     Throughout the Martinez Employment Period, particularly when he worked at Mitchell's Wines, Martinez frequently worked in excess of ten (10) hours per day, yet Defendants failed to pay Martinez spread-of-hours premiums.

47.     At no point during Martinez' employment did he receive a wage notice showing his hourly or overtime rate.

48.     Plaintiff's work was performed in the normal course of Defendants' business and

was integrated into Defendants' business.

**Defendants' Unlawful Corporate Policies**

49.     Plaintiff and the Collective Action Members were all paid pursuant to the same corporate policies of Defendants, specifically failing to pay minimum wage for all hours worked, failing to pay overtime premiums, and failing to pay spread-of-hours premiums.

50.     Defendants had a policy of paying weekly rates that effectively paid non-exempt employees like Plaintiff at hourly rates below the full statutory minimum wage. Since Defendants failed to provide notice to Plaintiff and Collective Action Members that Defendants were using the "tip credit" in calculating employees' wages and Plaintiff and Collective Action Members primarily performed non-tipped duties, Defendants are not eligible to claim the tip credit and therefore must pay the full New York state statutory wages to Plaintiff and the Collective Action Members.

51.     Plaintiff has spoken with other employees of Defendants who were similarly paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiff minimum wages for all hours worked is a corporate policy of Defendants which applies to all of their stockers, floor workers, delivery employees, cashiers or other non-management employees throughout the relevant time period.

52.     Plaintiff has spoken with other employees of Defendants, who similarly worked in excess of forty (40) hours during the relevant time period and were similarly paid a flat weekly rate for non-exempt work that did not provide overtime premiums of one and one-half (1.5) times their regular hourly rate for all hours worked over (40) per week.  Defendants' failure to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked over forty (40) hours per week was a corporate policy of Defendants, which applied to all stockers,

floor workers, delivery employees, cashiers and other non-management employees.

53.     Defendants' failure to pay Plaintiff spread-of-hours premiums for days in which Plaintiff has worked a spread of more than ten hours or a split shift has been a corporate policy which applies to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the relevant time period.

54.     Plaintiff has spoken with other employees of Defendants, who similarly were paid in cash and were not provided with any wage statement. Defendants' failure to provide wage statements in accordance with the requirements of the NYLL was a corporate policy that applied to all stockers, floor workers, delivery employees, cashiers and other non-management employees throughout the relevant time period.

55.     Defendants did not provide Plaintiff and the Collective Action Members with proper wage notices at the time of hire of by February 1 of each year. Defendants' failure to provide wage notices in accordance with the requirements of the NYLL was a corporate policy that applied to stockers, floor workers, delivery employees, cashiers and other non-management employees.

56.     Upon information and belief, throughout the relevant time period and continuing to today, Defendants have failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

57.     Throughout the relevant time period and, upon information and belief, continuing until today, Defendants have employed other individuals like Plaintiff in the normal course of business and in positions that require little skill and no capital investment.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought On Behalf of Plaintiff and the Collective Action Members)**

58.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

59.     By failing to pay the statutory minimum wage for all hours worked and failing to provide Plaintiff and the Collective Action Members with notice that Defendants were using the "tip credit" to calculate employees' wages and failing to pay overtime premiums, and since employees did not perform primarily tipped work, Defendants are not permitted to pay the "tipped minimum wage."  Therefore, by failing to pay the statutory minimum wage, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

60.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

61.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought On Behalf of Plaintiff and the Collective Action Members)

62.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

63.     Defendants violated the FLSA overtime rights of Plaintiff and the Collective Action Members by paying a flat weekly rate that did not include overtime premiums for hours worked in excess of forty (40) per week.

64.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

65.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

66.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
### (Brought On Behalf of Plaintiff and Opt-In Plaintiffs)

67.     Plaintiff, on behalf of himself and all Opt-In Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

68.     Defendants willfully violated Plaintiff's and Opt-In Plaintiffs' rights by failing to pay the correct statutory minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

69.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Opt-In Plaintiffs to suffer loss of wages and interest thereon.  Plaintiff and the Opt-In Plaintiffs are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought On Behalf of Plaintiff and the Opt-In Plaintiffs)

70.     Plaintiff, on behalf of himself and the Opt-In Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

71.     Defendants violated the NYLL overtime rights of the Plaintiff and the Opt-In Plaintiffs by improperly paying a flat weekly rate that failed to provide overtime premiums consisting of one and one-half (1.5) times the regular hourly rate for hours worked in excess of forty (40) hours per week.

72.     Defendants willfully violated Plaintiff's and the Opt-In Plaintiffs' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

73.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Opt-In Plaintiffs to suffer loss of wages and interest thereon. Plaintiff and the Opt-In Plaintiffs are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS</u>**
**(Brought On Behalf of Plaintiff and the Opt-In Plaintiffs)**

74.     Plaintiff, on behalf of himself and the Opt-In Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

75.     Defendants willfully violated Plaintiff's and the Opt-In Plaintiffs' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Opt-In Plaintiffs worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146.16 (2012).

76.     Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the Opt-In Plaintiffs to suffer loss of wages and interest thereon.  Plaintiff and the Opt-In Plaintiffsare entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for

unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – UNLAWFUL WITHHOLDING OF GRATUITIES</u>**
**(Brought On Behalf of Plaintiff and the Opt-In Plaintiffs)**

77.     Plaintiff, on behalf of himself and the Opt-In Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

78.     Defendants have willfully failed to compensate Plaintiff and the Opt-In Plaintiffs for all gratuities earned by withholding a portion of gratuities left by customers for Plaintiff and the Opt-In Plaintiffs, in violation of § 196-d of the NYLL. Accordingly, Defendants are required to compensate Plaintiff and the Opt-In Plaintiffs for all gratuities withheld by Defendants.

79.     Due to the Defendants' NYLL violations, Plaintiff and the Opt-In Plaintiffs are entitled to recover from Defendants their unpaid gratuities, damages for unreasonably delayed payment of wages liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et al.*, 196-d.

**SEVENTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS</u>**
**(Brought On Behalf of Plaintiff and the Opt-In Plaintiffs)**

80.     Plaintiff, on behalf of himself and the Opt-In Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

81.     Defendants have willfully failed to supply Plaintiff and the Opt-In Plaintiffs proper wage statements as required by Article 6, § 195(3).

82.     Due to Defendants' violations of the NYLL, Plaintiff and the Opt-In Plaintiffs are

entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### EIGHTH CAUSE OF ACTION
### NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS
#### (Brought On Behalf of Plaintiff and the Opt-In Plaintiffs)

83.     Plaintiff, on behalf of himself and the Opt-In Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

84.     Defendant has willfully failed to supply Plaintiff and the Opt-In Plaintiffs notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiff and the Opt-In Plaintiffs as their primary language, containing Plaintiff's and Opt-In Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

85.     Due to Defendants' violations of the NYLL, Plaintiff and the Opt-In Plaintiffs are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per

employee, as provided for by NYLL, Article 6, § 198(1-b)., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members, respectfully requests that this Court grant the following relief:

a.  Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.  An order tolling the statute of limitations;

c.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

d.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.  An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

f.   An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.   An award of damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

h.   An award of damages for the unlawful withholding of gratuities left by customers of Defendants for Plaintiff and the Opt-In Plaintiffs;

i.   An award of one hundred dollars ($100) per Plaintiff and each of the Opt-In Plaintiffs for each workweek that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Opt-In Plaintiffs as provided for by NYLL, Article 6 § 198(1-d);

j.   An award of fifty dollars ($50) per Plaintiff and each of the Opt-In Plaintiffs for each workweek that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Opt-In Plaintiffs as provided for by NYLL § 198(1-b)

k.   An award of prejudgment and post-judgment interest;

l.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
July 21, 2016

PELTON GRAHAM LLC

By: _____

Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative collective*

20

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las normas laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Beacon Wines and Spirits y Mitchell's Wine & Liquor Store y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en como debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton & Associates PC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Marcos Alfredo Narciso
Nombre Escrito

MAc.